■ In the Matter of FRANK M., Petitioner, v SIOBAHN N. et al., Respondents. SUSAN CROWE, Appellant. [702 NYS2d 409] —Mugglin, J. Appeal from an order of the Family Court of Ulster County (Mizel, J.), entered October 23, 1998, which, in a proceeding pursuant to Family Court Act article 6, imposed costs and sanctions on petitioner's attorney for frivolous conduct.

In a prior proceeding, petitioner obtained an order of filiation prior to the birth of his child. Concerned that respondent Siobahn N. (hereinafter respondent), the mother, would place the child for adoption, petitioner commenced this custody proceeding by order to show cause and petition shortly after the child was born. The order to show cause granted temporary custody to petitioner. Upon a motion by respondent's attorney and after a hearing, Family Court found that petitioner's attorney engaged in frivolous conduct by knowingly requesting and receiving ex parte relief without personally ascertaining that the court was aware that her adversary was present in the courthouse and available for conference and argument on

the requested relief, thereby wasting the court's time and the time of all counsel. The court imposed costs of $50 and a sanction of $50, resulting in this appeal by petitioner's attorney.

An attorney may be sanctioned only if there is a statute or a court rule authorizing the sanction (*see, Matter of Premo v Breslin*, 89 NY2d 995, 997). Sanctions for frivolous conduct are authorized by 22 NYCRR 130-1.1, but the only definition of frivolous conduct arguably applicable to this case is conduct "undertaken primarily to delay or prolong the resolution of the litigation, or to harass or maliciously injure another" (22 NYCRR 130-1.1 [c] [2]). Although Family Court was apparently of the view that the proceeding was prolonged by the conduct of petitioner's attorney, the court expressly found that the custody issue "was resolved fairly quickly and easily". More importantly, the court made no finding that the attorney's primary purpose was to prolong the proceeding, or to harass or maliciously injure another. Nor does the evidence support such a finding.

It appears that counsel sought prompt judicial intervention by way of an order to show cause for the primary purpose of protecting her client's parental rights, and it is not clear that she had any reason to believe that the Family Court was unaware of the presence of respondent's attorney. Court personnel, who were aware of the presence of respondent's attorney, inexplicably failed to pass this information along to the court. At most, the conduct of petitioner's counsel reflects a lack of professional courtesy but it does not rise to the level of frivolous conduct (*see, Brocklebank v City of Lockport*, 198 AD2d 906). While we share in Family Court's obvious displeasure, we are constrained by the language of 22 NYCRR 130-1.1 to conclude that the imposition of sanctions, under the circumstances of this case, was an abuse of discretion.

Crew III, J. P., Spain and Graffeo, JJ., concur.

Carpinello, J. (dissenting). Because I believe that Family Court neither abused its discretion nor exceeded its statutory authority in imposing nominal costs and a nominal sanction against petitioner's counsel, Susan Crowe, I am compelled to dissent. The exigent circumstances surrounding the questioned custody of the newborn child of petitioner and respondent Siobahn N. (hereinafter respondent) are apparent. Moreover, the propriety of Crowe's decision to proceed by order to show cause is not in dispute. Rather, it is Crowe's conduct, and that of her law partner, after the filing of the application (ostensibly ex parte) which in my view constitutes frivolous conduct.

The record reveals that Crowe and Andrew Beatty, respon-

dent's attorney, had a telephone conversation on the day the application was filed which ended with Crowe advising Beatty that she would be filing an application with Family Court that day to prevent the child's placement for adoption. Accordingly, both attorneys hastily proceeded to court. Crowe filed her proposed order to show cause (and attached custody petition) with court personnel *assuming* that the court was aware of Beatty's presence in the courthouse because the matter had been placed as an "add on" to the day calender. Significantly, neither the petition nor any cover memo advised the court that respondent was represented by counsel, that the identity of that counsel was known to Crowe, that the attorneys had discussed the matter at issue without resolution that day or that respondent's attorney intended to be physically present in the courthouse to be heard on the application.

Although Crowe's conduct up until this point, while questionable, may not in and of itself be sanctionable, it must be viewed in combination with subsequent conduct that day. Upon leaving the building to attend another matter, Crowe encountered Beatty, who introduced himself. Crowe admitted being aware that Beatty was present in the building *specifically for the purpose of being heard on her application.* Crowe neither advised Beatty that she had just filed her order to show cause nor provided him with a copy of the papers. Beatty, ignorant of the filing, waited for what would be the better part of four hours for the case to be called. Meanwhile, Family Court, also ignorant of Beatty's presence, dealt with the papers (consistent with their appearance) as an ex parte application requiring personal service on respondent and a subsequent return date for counsel to appear before the court. Obviously, had the court been advised of Beatty's representation of respondent and, more importantly, his physical presence in the courthouse that day, it could have dealt with the matter expeditiously by inviting counsel to appear either in chambers or in the courtroom that afternoon.

At the end of the day, the foregoing problematic conduct is compounded when Crowe's law partner, who had relieved her at the courthouse to permit her to attend another matter, picked up the signed order to show cause. Suspecting that Crowe's partner was present at the courthouse on this matter and had just discussed it with court personnel, Beatty approached him whereupon he was handed a set of the signed motion papers. Upon demanding that Crowe's partner remain in the courthouse so that the Family Court's ignorance of his presence could be rectified by their *joint* appearance on the ap-

plication, Crowe's partner made a "quick retreat down the stairs" and left the courthouse. Had Crowe's partner simply remained in the courthouse for a moment so that both attorneys could advise the court that there was no need for formal service and the scheduling of a return date, the entire "misunderstanding" could have been resolved instantly. Instead, the court's time was further wasted when it had to entertain Beatty ex parte. The only viable option for Family Court at this point was to shorten the return date while the issue of custody of the newborn waiting in the hospital remained needlessly in limbo.

In my view, Crowe's conduct (and that of her partner) during this entire matter, particularly her failure to fully inform Family Court, her failure to advise Beatty that the order to show cause had been filed when presented with the opportunity to do so, and the failure of her partner to remain in the courthouse at the reasonable request of Beatty "so that [they could] see the Judge together" was frivolous and could only have been intended to delay an adjudication of this important matter on the merits and to unnecessarily harass an adversary (see, 22 NYCRR 130.1-1 [c] [2]). I find particularly apt the following language in Shelley v Shelley (180 Misc 2d 275, 286): "Civil litigation is not a game to most of the attorneys who are involved in its practice. Nevertheless, there are members of the legal profession, like any other cross section of society, who believe that they may violate governing standards of behavior with impunity. The rules against frivolous conduct set forth in 22 NYCRR part 130 are intended to deal with those practitioners who may share that belief".

The determination of Family Court was a thorough, balanced and reasoned response to conduct which unnecessarily interfered with an efficient resolution of this delicate custody matter and should be affirmed.

Ordered that the order is reversed, on the law, without costs, and motion denied.